**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**PPC BROADBAND, INC.,**
**d/b/a PPC,**

                 **Plaintiff,**              **5:13-cv-538**
                                                **(GLS/DEP)**

       **v.**

**CORNING OPTICAL**
**COMMUNICATIONS RF, LLC,**

                 **Defendant.**

_____

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| Hiscock, Barclay Law Firm | DOUGLAS J. NASH, ESQ. |
| Syracuse Office | JOHN D. COOK, ESQ. |
| One Park Place | JASON C. HALPIN, ESQ. |
| 300 South State Street | BELLA S. SATRA, ESQ. |
| Syracuse, NY 13202-2078 | MARK E. GALVEZ, ESQ. |
| | |
| **FOR THE DEFENDANT**: | |
| Harter, Secrest Law Firm | DAVID M. LASCELL, ESQ. |
| Rochester Office | JERAULD E. BRYDGES, ESQ. |
| 1600 Bausch & Lomb Place | |
| Rochester, NY 14604-2711 | |
| | |
| DLA Piper LLP | JOSEPH P. LAVELLE, ESQ. |
| DC Office | ANDREW N. STEIN, ESQ. |
| 500 Eighth Avenue NW | |
| Washington, DC 22004 | |

**Gary L. Sharpe**
**Chief Judge**

## MEMORANDUM-DECISION AND ORDER

## I. Introduction

Plaintiff PPC Broadband, Inc., doing business as PPC, commenced this action against defendant Corning Optical Communications RF, LLC,[1] for alleged infringement of one of PPC's coaxial cable connector patents, U.S. Patent No. 6,676,446 ("'446 patent"). (*See generally* Compl., Dkt. No. 1.) Following the parties' request for the construction of ten disputed terms in the patent in suit, the court referred the matter to Magistrate Judge David E. Peebles for a *Markman*[2] hearing. (Dkt. Nos. 23, 24, 27, 28, 32.) In a Report and Recommendation (R&R) filed September 18, 2014, Judge Peebles recommended constructions for eight of the disputed terms, and, with respect to the remaining two, recommended that no construction was necessary. (Dkt. No. 35.) Pending are Corning's objections to the R&R. (Dkt. No. 36.) Largely for the reasons articulated by Judge Peebles, and for the reasons that follow, Judge Peebles' recommendations are adopted in their entirety.

---

[1] On June 27, 2014, the court approved the parties' stipulation to amend the caption in this case, in order to reflect that Corning Gilbert Inc. has changed its formal corporate name to Corning Optical Communications RF, LLC. (Dkt. No. 34.)

[2] *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996)

## II.  Standard of Review

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge.  If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*.  *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error.  *See id.* at *4-5.

## III.  Discussion

Although there were ten disputed terms at issue in the R&R, Corning's objections relate only to the proposed construction of three of the terms: "connector body/connector body member"; "a first end"; and "wherein the fastener member is slidingly moved . . . without rotation." (Dkt. No. 36 at 9-22.)  In response to Corning's objections, PPC argues that Judge Peebles' recommendations were appropriate and should be

3

adopted by this court. (Dkt. No. 39 at 8-25.) The court will address each of

the terms, and the respective recommended constructions to which

Corning has objected, below.

## A.    Connector Body

Judge Peebles recommended that the term "connector body" and/or

"connector body member" be given the construction: "structure of the

connector that is secured to the post at one end and includes an open end

for receiving a portion of the coaxial cable. This structure can be

comprised of more than one piece and is therefore not limited to a single

integral or unitary one-piece component." (Dkt. No. 35 at 17-24, 47.)

Corning has made a specific objection to this recommended construction,

arguing that it conflicts with prior decisions of this court, and, in particular, it

disputes the language indicating that the connector body is not limited to a

single integral or unitary one-piece component. (Dkt. No. 36 at 9-18.) The

court has thus reviewed this recommendation *de novo*.

When faced with "an actual dispute regarding the proper scope" of a

patent claim, the court must construe the allegedly infringed claim to

determine its meaning and scope. *O2 Micro Int'l Ltd. v. Beyond Innovation

Tech. Co., Ltd.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). In so doing, the

court is cognizant that unless the patentee "acts as his own lexicographer" or "disavows the full scope of a claim term either in the specification or during prosecution," the words of a claim are "given their plain and ordinary meaning [as understood by] one of skill in the art."  *See Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1365-67 (Fed. Cir. 2012). When "the meaning of a claim term as understood by persons of skill in the art is not readily apparent," the court must construe the disputed claim terms in order to resolve such disputes.  *O2 Micro*, 521 F.3d at 1360.

Here, Corning argues that Judge Peebles' recommended construction should not be adopted, because it conflicts with this court's construction of the term "connector body" in other patents, from other litigation between these two parties, and constitutes an improper limiting instruction.  (Dkt. No. 36 at 9-13, 16-18); *see PPC Broadband, Inc. v. Corning Optical Commc'ns RF, LLC* (*PPC II*), No. 5:12-cv-911, 2014 WL 4199244, at *1-2 (N.D.N.Y. Aug. 21, 2014); *John Mezzalingua Assocs., Inc. v. Corning Gilbert Inc.* (*PPC I*), No. 5:11-cv-761, 2012 WL 5880674, at *1-2 (N.D.N.Y. Nov. 21, 2012).  In *PPC I*, which involves patents from the same family as the '446 patent at issue here, the court adopted the magistrate judge's recommendation that the term "connector body" required no further

5

construction, as there was "neither ambiguity in the terms, nor a dispute as to the scope of the claim," and thus gave this term its plain and ordinary meaning. 2012 WL 5880674, at *1-2. However, in *PPC II*, given that the parties plainly disputed the scope of the claim term—specifically, whether it encompassed a connector body that was composed of more than one piece—and that there was no indication in the patent claims or specifications that the inventors intended to restrict the term to a single component, the court opted to construe the term as not limited to a "single or unitary one-piece component." 2014 WL 4199244, at *2. Thus, Corning argues that, in the instant case, the term should be construed as it was in *PPC I*, and not given the construction from *PPC II* as Judge Peebles recommends, because the additional language regarding the composition of the connector body would render this construction inconsistent with the construction used in *PPC I*. (Dkt. No. 36 at 9-13.)

Contrary to Corning's argument, the recommended construction is not inconsistent with that used in *PPC I*, where the term was given its plain and ordinary meaning. As this court has stated, in *PPC I*, there was "neither ambiguity in the terms, nor a dispute as to the scope of the claim," and thus no construction was necessary. 2012 WL 5880674, at *1-2.

6

However, here, as in *PPC II*, Corning plainly disputes whether the

connector body may be composed of more than one component, and thus

the court is required to resolve this dispute as to claim scope, and the

recommended construction achieves this.  *See O2 Micro*, 521 F.3d at 1360

("When the parties raise an actual dispute regarding the proper scope of

. . . claims, the court, not the jury, must resolve that dispute." (citing

*Markman*, 52 F.3d at 979)).  Although Corning further argues that Judge

Peebles' recommended construction is not based on the intrinsic evidence

of this case, asserting that "there is nothing in the . . . '446 Patent

specification . . . to support the added limitation that the structure of the

claimed connector body 'can be comprised of more than one piece and is

therefore not limited to a single integral . . . component,'" (Dkt. No. 36 at

13-16), this argument is equally unavailing.  Claim terms are generally

given the full scope of their meaning unless there is evidence limiting the

scope.  *See Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1358

(Fed. Cir. 2004) ("Absent a clear disavowal in the specification or the

prosecution history, the patentee is entitled to the full scope of its claim

language.")  Here, because there is no indication in the '446 patent or its

specification that the inventors intended to restrict the term connector body

7

to a single unitary structure, it is entitled to its full scope and there is no basis to limit it to a single or unitary one-piece component. *See id.*

The court is equally unpersuaded by Corning's argument that the recommended construction constitutes a "limiting instruction." (Dkt. No. 36 at 16-18.) To the contrary, the construction does not limit the scope of the claim term, and instead resolves an ongoing dispute between the parties with respect to the claim scope, as the court is obligated to do at this stage of the litigation. *See O2 Micro*, 521 F.3d at 1360. This recommended construction is therefore adopted.

## B.   A First End

With respect to the term "a first end," Judge Peebles recommended that no further construction was necessary for this term. (Dkt. No. 35 at 25.) As he noted, during the *Markman* hearing, counsel for Corning expressly indicated that it "would not object if [the court] appl[ied] the construction of [*PPC I*]," which was that this term required no further construction. (Dkt. No. 41 at 39); *see PPC I*, 2012 WL 5880674, at *3. Despite this concession to the court, Corning now objects to the recommended construction of this term. (Dkt. No. 36 at 18-20.)

Corning's objections to the construction of "a first end" consist of

arguments it already presented to Judge Peebles in its opening claim construction brief.  (*Compare* Dkt. No. 24 at 16-17, *with* Dkt. No. 36 at 18-20.)  Despite its claim that the entire R&R is reviewed *de novo*, (Dkt. No. 36 at 7), the court need only conduct a clear error review with respect to arguments that have already been submitted to the magistrate judge.  *See Almonte*, 2006 WL 149049, at *4.  Having reviewed those arguments for clear error, and finding none, the court adopts Judge Peebles' recommendation that no construction is necessary.

**C.**   **Wherein the Fastener Member is Slidingly Moved From the First Preinstalled Configuration Toward the Second End of the Connector Body Without Rotation**

With respect to this term, which appears in dependent Claim 3 of the '446 patent, (Dkt. No. 1, Attach. 1 at 31), Judge Peebles recommended that it be construed as "the fastener member is configured to slide from its first pre-installed position toward the second end of the connector body without having to be rotated."  (Dkt. No. 35 at 40-44, 47.)  In its objections, Corning argues that this claim "is invalid for inserting a method step into an apparatus claim," (Dkt. No. 36 at 21), and that Judge Peebles' recommendation constitutes an improper rewriting of an unambiguous claim, (*id.* at 21-22).

As above, Corning's argument that this claim improperly incorporates a method step, thus rendering the claim indefinite and invalid, was one that was already presented to, and considered by, Judge Peebles. (*Compare* Dkt. No. 24 at 22, *with* Dkt. No. 36 at 21; Dkt. No. 35 at 41-43.) Accordingly, the court has reviewed this argument for clear error and found none. The court agrees with Judge Peebles' assessment that "[t]here is nothing in Claim 3 or anything in the '446 Patent's specification suggesting that someone is required to slide the fastener member toward the connector body (with or without rotation)." (Dkt. No. 35 at 43.) Rather, the more logical reading of the claim's language suggests that infringement occurs when one "creates a connector . . . that includes a fastener member capable of being moved from its preinstalled configuration towards the connector body without being rotated." (*Id.*) The language of the claim, when read in the context of Claim 1, on which it is dependent, does not suggest that infringement occurs upon the act of sliding a fastener member toward the connector body without rotating it, but rather further describes the structure of the invention, explaining that it is a "connector . . . wherein the fastener member is slidingly moved." (Dkt. No. 1, Attach. 1 at 31.) The addition of the language "configured to slide" would not be an

10

impermissible rewriting of the claim in order to preserve its validity, as

Corning suggests, (Dkt. No. 36 at 21-22), and, instead, constitutes a

resolution of an ambiguity noted by the parties, in order to ultimately clarify

this claim term's meaning in the context of this litigation.

## D.     Remaining Constructions

No objections having been filed to the remaining recommended

constructions, the court has reviewed them for clear error and found none.

*See Almonte*, 2006 WL 149049, at *4-5.  Accordingly, the remainder of

Judge Peebles' recommended constructions are adopted.

## IV.  Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge David E. Peebles' September 18,

2014 Report and Recommendation (Dkt. No. 35) is **ADOPTED** in its

entirety; and it is further

**ORDERED** that the following meanings shall be affixed to the patent

claim terms in dispute:

| Disputed Term | Construction |
| --- | --- |
| connector body and/or connector body member | "structure of the connector that is secured to the post at one end and includes an open end for |

| | |
|---|---|
| | receiving a portion of the coaxial cable. The structure can be comprised of more than one piece and is therefore not limited to a single integral or unitary one-piece component." |
| A first end | No construction necessary |
| A first central bore extending about said tubular post | "a cavity lying between the inner wall of the connector body and the post" |
| Fastener member | "the structure of the connector that deforms the connector body member inwardly toward the post when slid over the connector body" |
| Central passageway | "a cavity in the center of the fastener member extending between the first and second ends thereof" |
| Secured to the connector body prior to installation | "the first end of the fastener member is secured to the connector body in the pre-installed state and prior to the prepared end of the coaxial cable being inserted in to the second end of the fastener member during installation" |
| Central passageway being dimensioned to compress the first end of the connector body radially inward to decrease the volume of | "the central passageway contains a portion of reduced diameter that contacts the connector body and compresses the body radially |

| | |
|---|---|
| the first central bore | inwardly toward the post, thereby decreasing the volume of the first central bore" |
| Ramped surface | "a surface inside the fastener member that starts at one diameter toward the first opening and gradually narrows to a smaller diameter toward the second opening" |
| Wherein the fastener member is slidingly moved from the first preinstalled configuration to the second end of the connector body without rotation | "the fastener member is configured to slide from its first pre-installed position toward the second end of the connector body without having to be rotated" |
| First end of said connector body is secured to said fastener member by a press fit | No construction necessary |

**ORDERED** that the Clerk provide a copy of this Memorandum-

Decision and Order to the parties.

**IT IS SO ORDERED.**

March 3, 2015
Albany, New York

Gary L. Sharpe
Chief Judge,
U.S. District Court

13